(June 16, 1904.)

## VOLLMER v. ESTATE OF JAMES W. REID.

### [77 Pac. 325.]

CHATTEL MORTGAGE—RENEWAL.

1. Where it is shown that a chattel mortgage is given as security for a debt then existing, evidenced by a promissory note of even date therewith, and thereafter a new note and chattel mortgage are given to cover the same debt, even though a different rate of interest is provided for in the new note, and an additional sum for attorney's fee provided for therein, *held,* not to be a new contract where it is stated in the mortgage that the new obligation is given for the purpose of renewal of the old.

(Syllabus by the court.)

APPEAL from the District Court of Nez Perce County. Honorable Edgar C. Steele, Judge.

From a judgment for plaintiff, defendant Morris appeals. Affirmed. Costs awarded to respondent.

The facts are stated in the opinion.

Daniel Needham, for Appellant.

We contend that after the legislature of this state enacted the law requiring the joint concurrence of both husband and

wife in order to create a valid chattel mortgage on exempt personal property, the said mortgagor could not create any valid liens on the property in controversy, nor renew or extend any lien that was placed thereon prior to the enactment of said law —Session Laws of the state of Idaho of 1899, page 292—to the prejudice of the interest of subsequent intervening third parties without the concurrence of his wife. In support of the foregoing contention we cite the following: *Kindall v. Lincoln Hdw. etc. Co. et al.,* 8 Idaho, 664, 70 Pac. 1056; *Willows v. Rosenstein,* 5 Idaho, 305, 48 Pac. 1067; *Watt v. Wright,* 66 Cal. 202, 5 Pac. 91; *Wood v. Goodfellow,* 43 Cal. 185. When third persons have subsequently acquired interests in the mortgaged property, they may invoke the aid of the statutes as against the first mortgagee, even though the mortgagor, as between himself and the mortgagee, may have waived its protection; and we see no difference in principle between a suspension of the running of the statutes resulting from an express waiver and one caused by the voluntary act of the mortgagor in the absenting himself from the state. (*California Bank et al. v. Brooks,* 126 Cal. 198, 59 Pac. 302; *Newhall v. Hatch et al.* (Cal.), 64 Pac. 250.) We further contend that an acknowledgment in writing must clearly relate to the particular debt, must identify it, and must amount to a promise to pay it, or it will be insufficient. (*Gragg v. Barnes,* 32 Kan. 301, 4 Pac. 276; *Haythorn v. Cooper,* 65 Kan. 338, 69 Pac. 333; *Shepherd v. Thompson,* 122 U. S. 231, 7 Sup. Ct. Rep. 1229, 30 L. ed. 1156.) Can it be said that the note of June 28, 1900, on its face clearly relates to the note of March 21, 1896, as the particular debt, or identify it in any way? We think not; and it is apparent to us that the transaction of 1900 must stand as a new contract, which under the laws of this state is void. (*Siemans & Halske Electric Co. of America v. Ten Broek,* 97 Mo. App. 173, 70 S. W. 1092.)

George W. Tannahill, for Respondent.

Counsel contends that the court erred in entering its finding No. 5, for the reason that there was no reference made in the note dated June 28, 1900, to the note dated March 21, 1896, and that the court erred in admitting oral evidence in explana-

tion of the execution of the note bearing date June 28, 1900, connecting the same with the note bearing date March 21, 1896, and proving by oral evidence that the note dated June 21, 1900, was a renewal of the note dated March 21, 1896. This court has passed upon this question and held that the identity of the two notes may be shown by parol testimony. (*Kelly et al. v. Leachman,* 3 Idaho, 629, 33 Pac. 44; *Kincaid v. Archibald,* 73 N. Y. 189; *Fowler v. Elwood,* 66 Ill. 446; *Wilcox et al. v. Williams,* 5 Nev. 206; *Birrell v. Schie et al.,* 9 Cal. 104-108; *Spring v. Hill & Carr,* 6 Cal. 18; Herman on Chattel Mortgages, 129.) Section 3351, Revised Statutes of Idaho, provides how a mortgage may be renewed or extended. We contend the acknowledgment of the chattel mortgage dated June 28, 1900, meets the requirements of this statute, and if it did not, this court has frequently held that the extension of time simply affects the remedy and not the obligation. We call special attention to the cases heretofore decided by the court, to wit: *Moulton v. Williams,* 6 Idaho, 424, 55 Pac. 1019; *Law v. Spence,* 5 Idaho, 244, 48 Pac. 282-284; *Burk Land etc. Co. v. Wells-Fargo Co.,* 7 Idaho, 42, 60 Pac. 92.

STOCKSLAGER, J.—The plaintiff commenced his action in the district court of Nez Perce county, alleging that on the twenty-first day of March, 1896, Jas. W. Reid executed and delivered to John P. Vollmer his promissory note for $331, due in ninety days after date, with interest at the rate of one and one-half per cent per annum from date, which note provided for payment in event of suit or action to enforce the execution of the same, the sum of $30 attorneys' fees.

The fourth allegation is that to secure the payment of said note Reid mortgaged to Vollmer on the same date the following chattels: Federal Reporter, volumes 1 to 68, and four digests; Pacific Reporter, volumes 1 to 42, and one digest; American Annual Digest, 10 volumes, 1887 to 1895, inclusive; New York Reports, Court of Appeals, volumes 1 to 147, and four digests by Brightly.

That plaintiff annexes hereto as a part hereof a copy of said mortgage and hereby incorporates the same herein the same as if set forth at length.

The sixth allegation says: "That subsequent to the execution and delivery of said promissory note and of said mortgage, on, to wit, the twenty-eighth day of June, 1900, the said Jas. W. Reid renewed the said note and mortgage and on the said twenty-eighth day of June, 1900, the said Jas. W. Reid, for the purpose of renewing the said note and mortgage as aforesaid, executed and delivered to John J. Vollmer his promissory note for $334 of date January 27, 1899, due one year after date at the rate of twelve per cent per annum from date, which note provided for the payment of $50 attorneys' fees in event of suits, etc."

The seventh allegation is: "That for the further purpose of renewing said promissory note and mortgage as above described, the said Jas. W. Reid, as mortgagor, on the twenty-eighth day of June, 1900, executed and delivered to John P. Vollmer, as mortgagee, his certain instrument in writing, under seal, known as a chattel mortgage, a copy of which is hereto annexed, marked exhibit 'A' and made a part of this complaint as fully as if here set out, which said chattel mortgage was made in good faith for the purpose aforesaid, without intent to defraud creditors and purchasers, and was verified, acknowledged and filed pursuant to statutes in such case made and provided, and was duly filed for record on the thirtieth day of June, 1900."

The eighth allegation is "that the property mentioned and described in said chattel mortgage and the schedule annexed consisted of the following law books constituting a part of his library, to wit:" (Here follows a description of the same books described in the mortgage of March 21, 1896, and an allegation that this mortgage was a renewal of said first mortgage.)

The ninth allegation is that the last described note and mortgage were made, executed and delivered for the purpose of renewing the said note and mortgage, dated March 21, 1896, together with the accrued interest thereon, which said promissory note last above described is the identical note first above described, with the interest included therein, and is a renewal thereof.

The tenth allegation is that default has been made in the said chattel mortgage and the said notes in this: that the said notes have long since matured and remain wholly and entirely unpaid.

The eleventh allegation is that prior to the institution of this proceeding, plaintiff presented to the administrator of the estate of Jas. W. Reid his claim based upon said note, and at the time of presenting the same based his claim upon a copy of the note and mortgage referred to, and that the same was duly allowed as a secured claim against said estate by the administrator thereof, which allowance was approved by the probate court of Nez Perce county.

The twelfth sets out that there is due on said note as renewed and secured by said mortgage the sum of $504, with interest on $344 thereof at twelve per cent per annum from February 10, 1903.

The thirteenth alleges that the Lewiston National Bank, a corporation, and J. B. Morris, have, or claim to have, some interest in the property herein described and described in the hereto annexed exhibit as mortgagees, encumbrancers or purchasers, the exact nature of which is unknown to plaintiff, and which interest is subsequent, subject, prior and junior to plaintiff's said mortgage, and said corporation and said Morris are made parties hereto by reason of such adverse interest.

The prayer is: 1. That plaintiff's mortgage dated March 21, 1896, and promissory note of the same date for the sum of $331 be revived, and that said promissory note and chattel mortgage as renewed and revived be foreclosed.

2. That the defendant and the estate of Jas. W. Reid, deceased, be foreclosed of all equity of redemption; that the mortgaged property be sold and the proceeds applied to the payment of the costs and expenses in this action and of counsel fees in the sum of $50, and the amount due on said note and mortgage with interest from February 10, 1903, at twelve per cent per annum; that the estate of Jas. W. Reid, deceased, be adjudged to pay any deficiency that may remain after applying all of said money as aforesaid and for costs of suit.

The answer admits the corporate existence of the First National Bank of Lewiston as alleged in the complaint, also that Jas. W. Reid died intestate, as alleged, and that Jas. R. Lydon was appointed administrator of his estate and as such admits his possession of the property in controversy. That the schedule

of law books set forth in the complaint constitute a part of the law library of said Reid; that prior to the commencement of this action plaintiff presented his claim based upon said note, and that the same was duly allowed as a secured claim against the said estate by the administrator, which allowance was approved by the probate court of Nez Perce county. That J. B. Morris claims to have an interest in the property in controversy, and avers that said Morris is a preferred creditor of said estate to the amount of $559.

For a second and separate affirmative defense the defendants aver that the right of plaintiff to maintain an action on the note and mortgage alleged to have been executed by said Reid March 21, 1896, was barred by the provisions of section 4052, Revised Statutes of Idaho, before the commencement of this suit.

As a third and separate affirmative defense defendants aver that the property covered by the pretended mortgage dated June 28, 1900, is exempt from execution under the laws of this state, for the reason that Reid was a married man at the time of the execution of said pretended mortgage and that his wife did not sign said pretended mortgage, hence it is void as to subsequent creditors.

Upon the issues thus framed the case was tried and the court made its findings of fact and conclusions of law.

The findings on the disputed issues are as follows: That on the twenty-first day of March, 1896, Jas. W. Reid executed and delivered to John P. Vollmer his promissory note for $331. That to secure the payment of said note said Jas. W. Reid made and executed the mortgage dated March 21, 1896, mortgaging the property described in said mortgage; then follows a description of the property as appears in the complaint. That subsequently, to wit, the twenty-eighth day of June, 1900, said Reid renewed said note and mortgage, and for the purpose of renewing said note and mortgage said Reid on same day executed and delivered to said Vollmer his promissory note for $344 and his certain acknowledged indenture renewing said mortgage, thereby renewing the said note and continuing in full force and effect said mortgage bearing date March 21, 1896.

That default has been made in the payment of said chattel mortgage and said note, and that said notes have long since matured and remained wholly and entirely unpaid. That there is now due, owing and unpaid on the said promissory note dated June 28, 1900, in principal and interest, the sum of $481.38. That all the material allegations of plaintiff's complaint are found to be supported by the evidence and true. That all the material allegations and averments of defendant's answer in conflict with the foregoing findings are found to be unsupported by the evidence and not true. That said note dated June 28, 1900, and the note dated March 21, 1896, and said mortgage dated March 21, 1896, are found to be not barred by the statutes of limitations as alleged in defendant's answer. That the allegations contained in defendant's second and third affirmative defense are found to be unsupported by the evidence and not true.

The conclusions of law follow the foregoing findings of fact.

Counsel for appellant in his brief says the points to be determined are as follows: 1. Is the note of June 28, 1900, a renewal of the chattel mortgage of March 21, 1896? 2. Is the chattel mortgage of June 28th executed in accordance with the laws of the state of Idaho? 3. Was the right of action based on the note and chattel mortgage executed on the twenty-first day of March, 1896, at the time of the commencement of this action under the laws of this state? 4. Can lien of the note and mortgage be extended by the contract of the parties to the prejudice of the intervening rights of third persons without their concurrence?

There does not seem to be any question but that the deceased, Reid, executed and delivered the note and chattel mortgage dated March 23, 1896; neither is the execution and delivery of the note and chattel mortgage of date June 28, 1900, by deceased, Reid, to John P. Vollmer questioned, as shown by the record. The good faith and honesty of purpose of neither deceased or Vollmer is called in question in either transaction. It is also beyond question that deceased at the time of the execution and delivery of the notes and mortgages in both transactions, and for a number of years prior thereto, had

resided in the city of Lewiston, this state, and his wife during all this time had resided in the state of North Carolina, never at any time claiming her residence in Idaho. It is further shown by the record that she is not in court claiming any relief under the exemption laws of this state.

The contention of counsel for appellant is based upon the theory that the note and mortgage of June 28, 1900, is not in any sense a renewal of the note and mortgage of date March 21, 1896, hence a new contract, and subject to the terms and conditions of the statute then in force relative to chattel mortgages. The statute referred to is found in Session Laws of 1899, page 292, and is as follows: "No personal property of either husband or wife that is exempt by law from execution shall be mortgaged by either husband or wife without a joint concurrence of both." And in support of this position we are cited to *Kindall v. Lincoln Hdw. etc. Co.,* 8 Idaho, 664, 70 Pac. 1056. This was an action to foreclose a chattel mortgage on a certain growing crop on the land of defendant Kindall and his wife, who were residing together in the state of Idaho, the action being a joint one of husband and wife to enjoin the sale of the crop under the exemption laws of the state. This case is not decisive of the one at bar for the reason that the real parties in interest invoked the exemption laws of the state, and for the further reason that there is no question of renewal of the note and mortgage, the entire transaction being under the laws as they now exist relative to exemption of chattel property.

Our attention is also called to *Willows v. Rosenstein,* 5 Idaho, 305, 48 Pac. 1067. The syllabus says: "The plaintiff gave to defendant a chattel mortgage to secure an indebtedness of some $341; subsequently plaintiff and his copartner becoming indebted to defendant, they jointly executed to the defendant a chattel mortgage upon property belonging to the firm for the sum of $1215, in which was included the amount of said first mortgage of $341. The mortgage for $1215 was subsequently paid in full. By an agreement between plaintiff and defendant the latter was, however, to hold said first mortgage as security for an individual indebtedness existing and to arise

from future advances to be made by defendant to plaintiff.. Such agreement is contrary to the provisions of section 3551, Revised Statutes of Idaho."

The contention of learned counsel for appellant is not supported by this case. In the opinion which was written by Mr. Justice Huston and concurred in by his associates, Justices Sullivan and Quarles, we find the following language: "The taking of new or additional security for the same debt does not always operate as a release or cancellation of the original security; a new mortgage and note are payment of the old se- ·curity when such is the agreement or understanding of the parties; citing Jones on Mortgages, sec. 645; *Brown v. Dunckel,* 46 Mich. 29, 8 N. W. 537; 2 Jones on Mortgages, sec. 926."

If we are to follow this case—and we can see no reason why we should not—it is decisive of the question before us for consideration. In the mortgage of June 28, 1900, following the description of the property, we find the following language: "And the same books heretofore mortgaged by said first party to John P. Vollmer on the twenty-first day of March, 1896, *this mortgage being a renewal of said mortgage given on the twenty-first day of March, 1896."* Can there be any misapprehension of the intention of the parties to this transaction?

It is next urged by counsel for appellant that owing to the fact that the second mortgage covered all the books of the first and seven additional volumes, and that the consideration was $331 in the first note and $344 in the second, and also that the rate of interest was different as stipulated in the notes, and the amount provided for as attorneys' fees in case of foreclosure was not the same in the two notes, that the second note and mortgage became a new contract and in no sense a renewal of the old.

Under the facts in this case we cannot give our assent to this contention. The entire record shows honest dealing and the best of faith on the part of Mr. Vollmer and the deceased, Reid, to keep the original security alive. When the new note and mortgage were given, the legal rate of interest as then provided for by law was incorporated into the notes, the difference between $331, the original note, and $344, the new

one, was doubtless the interest due on the old note as agreed upon. The $20 additional attorney's fee provided for in the new note was evidently agreed upon. (See *Kelley et al. v. Leachman,* 3 Idaho, 629, 33 Pac. 44.) It might be well to suggest that the deceased, Reid, was a lawyer of known ability all over the state, hence it cannot be said that he did not fully understand the transaction and did not intend to do just what he stated in the mortgage to renew the original debt.

Other errors are assigned, but in our view of the case it is unnecessary to pass upon them.

The judgment is affirmed with costs to respondent.

Sullivan, C. J., concurs in conclusion reached.

AILSHIE, J., Concurring.—I desire to place my concurrence entirely upon the proposition that the transaction of June 28, 1900, was a renewal of the contract and obligation of March 21, 1896. This renewal kept the original contract alive and in force and entitled the plaintiff to the relief granted.