# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 42479

| | | |
|---|---|---|
| UNION BANK, N.A., a national banking association, | ) ) ) | |
| Plaintiff-Respondent, | ) ) | |
| v. | ) ) | Coeur d'Alene, August 2016 Term |
| JV L.L.C., an Idaho limited liability company, | ) ) ) | 2017 Opinion No. 7 |
| Defendant-Appellant, | ) ) | Filed: January 27, 2017 |
| and | ) ) | Stephen Kenyon, Clerk |
| PEND OREILLE BONNER DEVELOPMENT, LLC, a Nevada limited liability company, NORTH IDAHO RESORTS, an Idaho limited liability company, DAN JACOBSON, an individual, SAGE HOLDINGS LLC, an Idaho limited liability company, TIMBERLINE INVESTMENTS, LLC, an Idaho limited liability company, STEVEN G. LAZAR, an individual, AMY KORENGUT, an individual, HLT REAL ESTATE LLC, PANHANDLE STATE BANK, an Idaho corporation, R.E. LOANS, LLC, a California limited liability company, WELLS FARGO FOOTHILL, INC., a Delaware limited liability company, PEND OREILLE BONNER DEVELOPMENT HOLDINGS, INC., a Nevada corporation, PENSCO TRUST CO. custodian f/b/a Barney Ng, a California corporation, MORTGAGE FUND '08 LLC, a California limited liability company, B-K LIGHTING, INC., a California corporation, FREDERICK J. GRANT, an individual, CHRISTINE GRANT, an individual, RUSS CAPITAL GROUP, LLC, an Arizona limited liability company, JOSEPH DUSSICH, an individual, MOUNTAIN WEST BANK, an Idaho corporation, STATE | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

**OF IDAHO, DEPARTMENT OF REVENUE** )
**AND TAXATION, MONTAHENO** )
**INVESTMENTS, LLC, a Nevada limited** )
**liability company, TOYON INVESTMENTS,** )
**LLC, a Nevada limited liability company,** )
**CHARLES W. REEVES and ANNE B.** )
**REEVES, husband and wife, ACI** )
**NORTHWEST, INC., an Idaho corporation,** )
**and DOES 1 through 20, inclusive,** )
)
    **Defendants.** )
_____ )

    Appeal from the District Court of the First Judicial District of the State of Idaho, Bonner County.  Hon. Michael J. Griffin, District Judge.

    The judgment of the district court is <u>affirmed</u>.

    Finney Finney & Finney, P.A., Sandpoint, for appellant.  John Finney argued.

    Stoel Rives LLP, Boise, for respondent.  Christopher Pooser argued.

_____

HORTON, Justice.

    JV, LLC (JV) appeals from the district court's grant of summary judgment in favor of Union Bank, N.A. (Union Bank)[1] in a mortgage priority dispute. Union Bank sought to foreclose a mortgage on a property known as "Trestle Creek." JV claimed priority to the Trestle Creek property through a mortgage recorded June 19, 2006. Union Bank's mortgage was recorded March 25, 2008. Union Bank moved for summary judgment, arguing that JV had subordinated its lien to that of Union Bank. The district court agreed and granted the motion. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

    JV once owned property located above the shores of Lake Pend Oreille near Sandpoint, Idaho. That property included the Hidden Lakes Golf Course and a nearby property known as "Moose Mountain." In 1995, JV sold the properties to Richard Villelli and his related entities. JV's position was secured by a first priority mortgage on the Moose Mountain property. Villelli was the managing member of North Idaho Resorts, LLC (NIR).

_____

[1] Union Bank is the current name of the original lender's successor-in-interest. We will not describe the sequence of corporate name changes and merger because they have no bearing upon our decision.

2

In January of 2005, NIR sold the golf course, the Moose Mountain property, and a nearby lakefront property (Trestle Creek) to Pend Oreille Bonner Investments, LLC, which then assigned the property to Pend Oreille Bonner Development, LLC (POBD). The purchase and sale agreement with NIR provided that POBD would assume responsibility for paying existing loan obligations to JV and R.E. Loans, LLC. As part of the agreement, POBD obtained the Moose Mountain property subject to JV's first priority mortgage. JV subordinated its lien on the Moose Mountain property to R.E. Loans in exchange for a first priority mortgage on the Trestle Creek property. JV's mortgage was recorded June 19, 2006.

In October 2007, Union Bank granted POBD a $5 million revolving line of credit. In 2008, Union Bank converted the line of credit into a $5 million loan under a revolving term note. The note was secured by a mortgage on the Trestle Creek property, recorded March 25, 2008. In June 2008, JV and POBD entered into a Third Amendment to Indebtedness and to Real Estate Security, and Subordination Agreement (Amendment). The Amendment provided:

> On the TRESTLE CREEK property the present first lien priority of J.V., LLC shall be subordinate and inferior to a new first lien priority of no more than $5,000,000.00.

JV received $30,000 and an increased interest rate on its loan to POBD for signing the Amendment.

In August of 2008, JV signed a document titled "Subordination Agreement." The Subordination Agreement identified Union Bank and JV as the parties and POBD as a borrower "bound by all terms, provisions and conditions thereof." Union Bank did not sign the Subordination Agreement. The Subordination Agreement provided:

> Creditor [JV] hereby subordinates the lien of Creditor's Deed of Trust, but only as said lien encumbers and pertains to the property described on **Exhibit A** [Trestle Creek] hereto, to the lien of the mortgage dated March 7, 2008 and recorded March 25, 2008 as Instrument No. 748379 and 748380 (the **"[Union Bank] Mortgage"**) to secure a loan (the **"[Union Bank] Loan"**) which [Union Bank] has heretofore made to Borrower [POBD] which [Union Bank] amount of Five Million Dollars ($5,000,000), the proceeds of which Borrower has used to pay off the existing indebtedness of Borrower and/or Holdings, Inc. and/or to pay for the improvement and development of property encumbered by Creditor's Deed of Trust, including the property described on **Exhibit A** and/or interest, fees, and charges payable to [Union Bank] on account of the [Union Bank] Loan.

(bold, underlining in original).

POBD defaulted on the Union Bank loan. In May of 2011, Union Bank filed an action to foreclose on all title and interest in Trestle Creek. Because there were numerous liens on the property, Union Bank named all of the lienholders as defendants, including JV and NIR. JV filed an answer and counterclaim against Union Bank and a cross-claim against NIR asserting a priority interest in the Trestle Creek property. Union Bank denied that JV possessed a superior claim to Trestle Creek. After some litigation, the only remaining parties that claimed a superior interest in Trestle Creek were Union Bank, JV, and NIR.

In March 2013, JV filed a motion for judgment on the pleadings. JV claimed that the only facts alleged in Union Bank's complaint showed that JV's mortgage, recorded June 19, 2006, was prior in time to Union Bank's mortgage, recorded March 25, 2008. The district court denied the motion, finding that based on the pleadings "there is an issue as to whether or not the plaintiff may foreclose JV's rights to the subject property."

On July 1, 2013, Union Bank filed a motion for partial summary judgment as to defendants NIR and JV. JV opposed the motion and submitted the affidavit of James W. Berry in opposition to the motion. Berry claimed that JV never entered into a subordination agreement with Union Bank, there was no consideration given for the agreement, and JV was fraudulently induced to enter into the agreement. The district court denied the motion with respect to NIR; however, the district court granted the motion with respect to JV concluding: "There is no genuine issue of material fact that: 1) UB's mortgage was recorded after JV's mortgage; and 2) that a valid [subordination] contract was entered into, by which JV's mortgage was made inferior to UB's mortgage."

On September 19, 2013, JV filed a motion to alter and amend the district court's order granting partial summary judgment and moved for reconsideration. JV again argued that it was fraudulently induced to enter into the subordination agreement and the agreement was invalid due to lack of consideration. As evidence, JV submitted a copy of the Amendment and three emails from POBD's attorney William Sterling. The district court denied JV's motion concluding that the Subordination Agreement was a fully integrated contract and that JV's evidence was parol evidence offered to contradict the terms of the contract. As to JV's claim of fraud, the district court concluded: "Without that parol[] evidence, there is no other credible evidence of fraud. James W. Berry's self-serving affidavit does not create a genuine issue of a material fact."

In March 2014, JV filed a motion to compel Union Bank to produce a global settlement agreement it had reached with POBD. Union Bank moved for a protective order. The district court ordered a redacted copy of the agreement sent to both JV and NIR and granted Union Bank's motion for a protective order.

A court trial was set for May 12, 2014. On April 29, 2014, JV filed a pre-trial memorandum and witness and exhibit lists. JV's pre-trial memorandum included the claim that the Subordination Agreement was invalid, as well as the claim that "JV holds the 1st priority Mortgage on the Trestle Creek Real Estate, ahead of [Union Bank]." On April 30, 2014, the district court sent JV a letter which stated:

> Counsel:
>
> Trial will begin May 12, 2014 at 9:00 am. The first issue that will be addressed is Union Bank's complaint against North Idaho Resorts. After the plaintiff's evidence North Idaho Resorts may present evidence in response to Union Bank's claims.
>
> After the claims between Union Bank and North Idaho Resorts have been presented, then all issues between North Idaho Resorts and Sage will be tried.
>
> None of the issues between JV, LLC and Union Bank will be re-litigated. The court's prior summary judgment disposed of all issues between JV, LLC and Union Bank. JV, LLC may be present in the courtroom as a spectator, but will not be at counsel table.

On May 9, 2014, three days before trial, JV filed an objection and a motion to reconsider. At the commencement of the trial, the district court again stated its intention to bifurcate the trial:

> THE COURT: My intention is to bifurcate the issues remaining. Today we're going to start with the Union Bank vs. North Idaho Resorts. And Mr. Finney on behalf of JV, LLC filed an answer to NIR's, North Idaho Resorts', counterclaim a week or so ago. A week ago, I guess. If that was intended to be an amended answer and counterclaim regarding Union Bank, then that would be dismissed because they didn't have permission to file it under Rule 15(c), in that, it's an answer to North Idaho Resorts' crossclaim that was filed, gosh, a long time ago, June 15th of 2012; that would be second. In other words, it's my intention to do the first part of this, and then thereafter to try the priorities between North Idaho Resorts and JV, LLC.

Following the trial, the district court entered findings of fact and conclusions of law holding that Union Bank's mortgage was superior to any vendor's lien held by NIR and that JV's mortgage was superior to NIR's lien. On June 14, 2014, the district court entered a final judgment of foreclosure as to all parties in Union Bank's favor. On September 19, 2014, the

district court entered a final judgment and Rule 54(b) certificate with respect to Union Bank's claim against JV. JV timely appealed.

## II. STANDARD OF REVIEW

"I.R.C.P. 12(c) governs motions for judgment on the pleadings. By its terms, Rule 12(c) treats such motions similarly to motions for summary judgment. Thus, the standard of review applicable to lower courts' rulings on motions for summary judgment also applies to motions for judgment on the pleadings." *Trimble v. Engelking*, 130 Idaho 300, 302, 939 P.2d 1379, 1381 (1997). "Summary judgment is appropriate if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Lockheed Martin Corp. v. Idaho State Tax Comm'n*, 142 Idaho 790, 793, 134 P.3d 641, 644 (2006). Furthermore, "[a]ll doubts are to be resolved against the moving party, and the motion must be denied if the evidence is such that conflicting inferences may be drawn therefrom, and if reasonable people might reach different conclusions." *G & M Farms v. Funk Irr. Co.*, 119 Idaho 514, 516–17, 808 P.2d 851, 853–54 (1991).

"[W]hen the district court grants summary judgment and then denies a motion for reconsideration, this Court must determine whether the evidence presented a genuine issue of material fact to defeat summary judgment. This means the Court reviews the district court's denial of a motion for reconsideration de novo." *Shea v. Kevic Corp.*, 156 Idaho 540, 545, 328 P.3d 520, 525 (2014) (internal quotations omitted).

"Due process issues are generally questions of law, and this Court exercises free review over questions of law." *Williams v. Idaho State Bd. of Real Estate Appraisers*, 157 Idaho 496, 504, 337 P.3d 655, 663 (2014) (quoting *Neighbors for a Healthy Gold Fork v. Valley Cty.*, 145 Idaho 121, 127, 176 P.3d 126, 132 (2007).

## III. ANALYSIS

JV argues that the district court erred in a number of respects, including its denial of JV's initial motion for judgment on the pleadings and its grant of partial summary judgment in Union Bank's favor. JV also asserts that the district court violated JV's procedural due process rights. We address these issues in turn.

### A. The district court did not err when it denied JV's motion for judgment on the pleadings.

The district court denied JV's motion for judgment on the pleadings concluding:

In liberally construing the plaintiff's first amended complaint as it relates to JV the court finds and concludes that there is an issue as to whether or not the plaintiff may foreclose JV's rights to the subject property. There is no dispute as to when JV and the plaintiff recorded their respective mortgages, but the plaintiff claims to have the right to foreclose against JV, and that is an issue that has been framed for trial.

JV contends that the district court erred when it denied the motion for judgment on the pleadings because the only facts alleged in the pleadings were that JV possessed a mortgage recorded June 19, 2006, and Union Bank possessed a mortgage recorded August 6, 2008. JV claims that the prayer for relief "forms no part of a statement of a cause of action" and that it is the facts alleged that are of chief import. JV argues that Union Bank's complaint lacked any mention of priority and there was no pleading that disclosed a theory, factually or legally, as to how Union Bank's mortgage could have priority over JV's mortgage. JV is incorrect.

"A judgment upon the pleadings results from the fact that the answer does not put in issue any of the material allegations of the complaint, or where the pleadings show upon their face that the party is entitled to recover without proof." *Davenport v. Burke*, 27 Idaho 464, 473, 149 P. 511, 515 (1915). "Where issues of fact are raised by the pleadings which require evidence to establish, before the court could intelligently determine whether such issues are with the plaintiff or defendant, it is error to enter judgment on the pleadings." *Idaho Placer Min. Co. v. Green*, 14 Idaho 294, 304, 94 P. 161, 164 (1908). "[A] judgment on the pleadings is allowable, not because of a lack of proof, but because of the lack of an issue." *Id.*

As a general rule, it might be stated that a motion for a judgment on the pleadings should not be granted, unless it clearly and satisfactorily appear to the trial court that there are no material issues raised by the denials in the answer or by the affirmative allegations of the answer. To finally adjudge and determine the rights of litigants upon a mere motion without a hearing or affording a full opportunity to litigate their rights might result in great injustice being done.

*Davenport*, 27 Idaho at 474, 149 P. at 515. A review of the pleadings shows that the material issue of Union Bank's claim of a priority lien interest was raised by the pleadings.

First, under the heading "DEFENDANTS," Union Bank's first amended complaint alleged:

[The following defendants claim, or may claim some interest in the real property that is the subject of this action, but the interest of said defendants are inferior and subordinate to the interest of plaintiff being foreclosed herein:]

JV was then listed as a defendant. Second, under the heading "FIRST CLAIM FOR RELIEF," Union Bank alleged: "Plaintiff's Mortgage is senior and superior to the interests of any of the defendants named in this action and the Mortgage should also be reformed as to each and every defendant. Plaintiff's senior and superior interest should be quieted as against each and every defendant." JV acknowledged this allegation in its answer: "JV denies paragraph 36 as to Plaintiff's allegation that its Mortgage is senior and superior to the interest of JV."

Third, under the heading "OTHER DEFENDANTS' INTEREST SUBJECT TO FORECLOSURE," Union Bank alleged: "JV L.L.C. claims an interest in the real properties that are the subject of this Complaint pursuant to a mortgage recorded June 19, 2006 as Instrument number 706470. This document, or portions thereof, may be impacted, and the rights related thereto foreclosed by Plaintiff." JV's answer also acknowledged this allegation and denied it: "JV admits the first sentence of paragraph 43 and denies the second (last) sentence."

Finally, in its answer to Union Bank's first amended complaint, JV presented a counterclaim that alleged: "The interest of the Plaintiff by its recorded mortgage, is inferior to the recorded mortgage of JV." In its reply pleading, Union Bank generally and specifically denied JV's allegation and further presented an affirmative defense:

> FOR AN EIGHTH, SEPARATE AND DISTINCT AFFIMATIVE [sic] DEFENSE, this answering counter defendant alleges that JV prepared, assisted in the preparation of, and/or caused to be executed and recorded that certain Subordination Agreement as alleged in the First Amended Complaint of the Bank thereby relinquishing its priority in the recorded title records to the claims of the Bank as related to the real property that is the subject matter of this action.

Thus, it is evident that the pleadings identified the relative priorities of the parties' liens as a material issue for resolution by the district court. The district court did not err when it denied JV's motion for judgment on the pleadings.

**B. The district court did not err when it granted summary judgment to Union Bank.**

The district court granted summary judgment to Union Bank concluding: "There is no genuine issue of material fact that: 1) UB's mortgage was recorded after JV's mortgage; and 2) that a valid [subordination] contract was entered into, by which JV's mortgage was made inferior to UB's mortgage."

JV contends: (1) there was no contract at all between JV and Union Bank because Union Bank never signed the Subordination Agreement; (2) the uncontested Affidavit of James W. Berry states that JV received no consideration for the Subordination Agreement; and, (3) the

uncontested Affidavit of James W. Berry states that POBD's manager, Charles Reeves, fraudulently induced JV to enter into the Subordination Agreement. We address these claims in turn.

**1. JV has waived its claim that the lack of Union Bank's signature renders the Subordination Agreement unenforceable.**

In its decision on summary judgment, the district court considered the significance of the absence of a signature by a Union Bank represenative:

> The [subordination] agreement states the parties to be the plaintiff and JV. An authorized agent of JV signed the agreement (their signature was acknowledged). No one signed the agreement for the plaintiff. The president of POBD also signed that agreement as the Borrower and promised to be bound by the terms of the agreement.

> JV argues that plaintiff's failure to sign the [subordination] agreement, and consequently the failure of the plaintiff's signature to be acknowledged, prevents the document from being recorded. JV's agent's signature is acknowledged and therefore, the clerk properly accepted the document and recorded it.

> The [subordination] agreement is a written document and is signed by the party that is obligated to perform, JV. The failure of an agent of the plaintiff to sign the document does not mean there is no contract. The plaintiff's only obligation was not to lend any more money to POBD without approval. The plaintiff performed its obligation.

It its briefing, JV argues: "JV is the creditor and FNB is the Bank as a contracting party, but FNB (Bank's) signature line is <u>blank – unsigned</u> at all, so there is no contract/agreement between the Bank and JV." (emphasis original) JV presents no authority to support its argument. "Where an appellant fails to assert his assignments of error with particularity and to support his position with sufficient authority, those assignments of error are too indefinite to be heard by the Court." *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010). Because JV has not presented this Court with any authority to support its argument, it has waived this assignment of error.

**2. The affidavit of James W. Berry was not sufficient to preclude summary judgment.**

In its decision on summary judgment, the district court considered the issue of consideration:

> JV argues that there was no consideration for the contract. JV seeks to offer [parol] evidence regarding the contract. However, the contract is a fully integrated contract. The contract itself is presumptive evidence of consideration to JV. The contract recites: "For valuable consideration, receipt whereof is hereby

acknowledged, and in consideration of the loans, advances, discounts, renewals or extensions now or hereafter made by (UB) to or for the account of (POBD) . . . Creditor agrees with (UB) as follows:"

The document clearly refers to past and future loans made earlier and to be made in the future by UB (up to a certain dollar maximum) to POBD.

The Subordination Agreement contains a choice of law provision providing that the Subordination Agreement is subject to California law. Under California law, the Subordination Agreement contained evidence of consideration. "A written instrument is presumptive evidence of a consideration." Cal. Civ. Code § 1614. Further, "[a] recital of consideration is prima facie evidence that a written contract is supported by a consideration." 14 Cal. Jur. 3d *Contracts* § 129; *Niederer v. Ferreira*, 234 Cal. Rptr. 779, 790 (App. 1987) ("The written guaranty containing the recital of consideration constituted a prima facie showing of consideration, and it was defendant's burden at trial to prove lack of consideration.")

JV's affidavit states: "JV received nothing, no consideration for the Subordination Agreement." JV contends: "The Affidavit of James Berry states that JV received no consideration, yet the District Judge found there was consideration, meaning he had to have weighed conflicting evidence to the contrary." Once again JV does not present this Court with any authority to support its claim.

In *Taft v. Jumbo Foods, Inc.*, this Court considered the requirements for evidence on a motion for summary judgment:

> When considering evidence presented in support of or opposition to a motion for summary judgment, a court can only consider material which would be admissible at trial. As a rule, supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Thus, an affidavit that is conclusory, based on hearsay, or not supported by personal knowledge does not satisfy the requirements of I.R.C.P. 56(e).

155 Idaho 511, 515, 314 P.3d 193, 197 (2013) (internal quotations, citations, and alterations omitted). JV has not presented this Court with any additional evidence or authority on the issue of consideration. Berry's affidavit was inadmissible for purposes of contradicting the recital of consideration found in the Subordination Agreement. *Hall v. Hall*, 116 Idaho 483, 484, 777 P.2d 255, 256 (1989) ("Where, as here, the consideration clause clearly recites that the transfer was made "For Value Received," parol evidence is not admissible to contradict the deed by attempting to show the transfer was in part a "gift" rather than "for value."). We conclude that

the district court did not err by holding that JV's conclusory affidavit on the issue of consideration was not sufficient evidence to preclude summary judgment.

### 3. JV has waived its claim of fraud in the inducement by POBD.

In its decision on summary judgment, the district court considered JV's claim of fraud:

> JV also argues fraud. JV does not argue fraud by UB, but fraud by the president of POBD. There is no showing of any fraud by UB. JV argues that it was misled to believe that money was to be lent to POBD by UB for the purpose of furthering the development of the Trestle Creek Property, thus making it more likely that JV would get repaid on its loan. JV argues that the money referred to in the [subordination] contract had already been loaned to POBD and was used to pay off prior loans of POBD. Any such misconception by JV was not caused by any actions of UB.

Once again JV has failed to support its assignments of error with argument or authority. JV's briefing on the motion for summary judgment mentions the word "fraud" or "fraudulent" only during a recitation of the contents of the Affidavit of James W. Berry, and again at the end of its summary judgment argument where JV claims:

> JV's Affidavit of James Berry set[s] forth elements of fraud defined as:
>
> Fraud.
>
> [25-28] "Fraud consists of '(1) a statement or a representation of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent that there be reliance; (6) the hearer's ignorance of the falsity of the statement; (7) reliance by the hearer; (8) justifiable reliance; and (9) resultant injury.'"
>
> *Washington Federal Sav. V. VanEngelen*
>
> 153 Idaho 648 at 657 (2012)

JV does not present any analysis of the elements of fraud or how they relate to the Affidavit of James W. Berry. Presumably, JV's overarching argument is that the uncontested Affidavit of James W. Berry laid out factual allegations of fraud in the inducement by POBD that would cause the Subordination Agreement to be unenforceable against JV. However, JV has not pointed to any legal error by the district court when it dismissed the allegations of fraud against POBD as irrelevant to the enforcement of the Subordination Agreement against JV by Union Bank. "A general attack on the findings and conclusions of the district court, without specific reference to evidentiary or legal errors, is insufficient to preserve an issue." *Bach*, 148 Idaho at 790, 229 P.3d at 1152. Because JV has once again failed to support its assignment of error with argument and authority, JV has waived this claim.

11

**C. The district court erred when it did not consider JV's new evidence in consideration of JV's motion for reconsideration; however, the error was harmless.**

JV argues that the district court refused to consider new evidence on its motion for reconsideration. JV filed two exhibits on reconsideration; the Third Amendment to Indebtedness and to Real Estate Security, and Subordination Agreement and a second attachment that contained three emails between JV and POBD regarding the Subordination Agreement. JV contends:

> [T]he district court erred by refusing to consider <u>additional facts</u>, being 3 letters from POBD's Attorney, Mr. Sterling. The 3 email letters from Attorney Sterling were to induce JV to subordinate its first lien Mortgage. The District Judge did not permit those email letters and the facts therein contained to be admitted <u>at all</u>, but he gave no reasons for that ruling.

JV is correct in that the district court should have considered any new evidence offered in connection with the motion for reconsideration; however, in this case the district court's error was harmless because the evidence was cumulative.

"The district court has no discretion on whether to entertain a motion for reconsideration pursuant to Idaho Rule of Civil Procedure 11(a)(2)(B). On a motion for reconsideration, the court must consider any new admissible evidence or authority bearing on the correctness of an interlocutory order." *Fragnella v. Petrovich*, 153 Idaho 266, 276, 281 P.3d 103, 113 (2012). "Even if the evidence may have been erroneously excluded, the exclusion is a harmless error if the evidence is merely cumulative." *Holzheimer v. Johannesen*, 125 Idaho 397, 401, 871 P.2d 814, 818 (1994). The district court's amended findings and conclusions states:

> The court was requested by JV to consider, as evidence, three e-mails from counsel for Pend Oreille Bonner Development, LLC (POBD) to counsel for JV. . . . JV also requested the court consider the Third Amendment to Indebtedness and to Real Estate Security, and Subordination Agreement ("Third Amendment") . . . . The court will consider the 'Third Amendment', but not the three emails.

JV submits that the three emails were submitted to show that POBD fraudulently induced JV into signing the Subordination Agreement. This is the same claim JV presented in its defense of Union Bank's motion for summary judgment. Once again, JV has not presented authority in support of its claim that the allegedly fraudulent conduct of POBD should permit it to avoid the agreement to subordinate its lien to that of Union Bank. Absent such authority, any error is harmless.

**D. JV's claims that its procedural due process rights were violated are without merit.**

JV argues:

> In the instant action, three (3) matters denied JV of procedural due process which are:
>
> 1. The District Judge's refusal to require the full Debt Restructure Agreement and Settlement Agreement to JV's counsel, on discovery.
> 2. The District Judge's letter of April 30, 2014, denying JV and counsel to be involved in the trial by POBD against JV and NIR.
> 3. The District Judge's announcement, at the trial commencement, that he would proceed to try the POBD case and then separately try the JV cross-claim against NIR.

We address these issues in turn.

### 1. JV has waived its claim that the district court erred when it denied JV a complete copy of the debt restructure and settlement agreement between Union Bank and POBD.

On April 18, 2014, well after its grant of partial summary judgment in favor of Union Bank, the district court ordered a redacted copy of the debt restructure and settlement agreement between Union Bank and POBD delivered to JV and NIR. In granting JV's motion to compel Union Bank to produce the settlement agreement, the district court concluded: "After reviewing the entire agreement and a redacted copy of that agreement (filed under seal) the court does not find the agreement relevant to the remaining issues in this case, however, the document may lead to the discovery of relevant evidence."

JV argues the district court erred when it only provided a redacted copy of the settlement agreement because "the document could not be used to lead to discovery of relevant evidence - because the District Judge refused furnishing the entire document to JV." JV contends a full copy of the settlement agreement would show that Union Bank still possessed $5 million in cash collateral with which to pay off the loan without foreclosure. JV further contends: "This issue also involves procedural due process."

"When reviewing the trial court's evidentiary rulings, this Court applies an abuse of discretion standard." *Edmunds v. Kraner*, 142 Idaho 867, 871, 136 P.3d 338, 342 (2006).

> When determining whether a district court abused its discretion, this Court considers three factors: (1) whether the trial court correctly perceived the issue as one of discretion, (2) whether it acted within the boundaries of its discretion and consistently with applicable legal principles, and (3) whether it reached its decision through an exercise of reason.

*Id.* at 873, 136 P.3d at 344.

JV's briefing contains no argument or citation to authority to show that the district court abused its discretion when ordering that a redacted copy be provided to JV. JV's briefing is similarly devoid of any argument and authority showing that the district court's order somehow "involves procedural due process." "Regardless of whether an issue is explicitly set forth in the party's brief as one of the issues on appeal, if the issue is only mentioned in passing and not supported by any cogent argument or authority, it cannot be considered by this Court." *Bach*, 148 Idaho at 790, 229 P.3d at 1152. Thus, we do not consider JV's claim.

## 2. JV's claim that the district court's bifurcation of the trial violated JV's procedural due process rights is without merit.

JV contends "The Letter and the District Judge's statement at trial commencement as to his 'bifurcating' the trial, both came without notice, without hearing, and no opportunity to be heard – at all. This is the denial of JV's procedural due process rights." We disagree.

"Procedural due process requires that there must be some process to ensure that the individual is not arbitrarily deprived of his rights in violation of the state or federal constitutions." *Cowan v. Bd. of Comm'rs of Fremont Cnty.*, 143 Idaho 501, 510, 148 P.3d 1247, 1256 (2006).

> Procedural due process is the aspect of due process relating to the minimal requirements of notice and a hearing if the deprivation of a significant life, liberty, or property interest may occur. A deprivation of property encompasses claims where there is a legitimate claim or entitlement to the asserted benefit under either state or federal law.

*Bradbury v. Idaho Judicial Council*, 136 Idaho 63, 72, 28 P.3d 1006, 1015 (2001). "[A]n individual must be provided with notice and an opportunity to be heard." *Spencer v. Kootenai Cnty.*, 145 Idaho 448, 454, 180 P.3d 487, 493 (2008). "Due process is not a rigid concept. Instead, the protections and safeguards necessary vary according to the situation." *Meyers v. Hansen*, 148 Idaho 283, 291-92, 221 P.3d 81, 89-90 (2009). "The appellate court will evaluate the constitutionality of the proceedings as a whole." *Id.*

JV's interest that it sought to protect was its property interest in the Trestle Creek property. JV claims that "[w]ithout being granted any due process by the District Court, JV could not establish its property right in its 2006 Mortgage." That claim is not supported by the record and is without merit. At all times throughout this litigation JV has had a full and fair opportunity to protect its property interest in Trestle Creek. JV's claim of superior property interest in Trestle Creek against Union Bank was heard both on summary judgment, and then on reconsideration.

14

Likewise, JV's claim of superior property interest in Trestle Creek as against NIR was heard at trial. JV makes no cogent argument as to how the district court's bifurcation of the trial impacted its due process rights. We find this claim to be without merit.

**E. Union Bank is entitled to attorney fees under Idaho Code section 12-120(3).**

Union Bank asks for attorney fees on appeal under Idaho Code section 12-120(3) or alternatively under Idaho Code section 12-121. An award of attorney fees under Idaho Code section 12-120(3) is proper if "the commercial transaction is integral to the claim, and constitutes the basis upon which the party is attempting to recover." *Blimka v. My Web Wholesaler, LLC*, 143 Idaho 723, 728, 152 P.3d 594, 599 (2007). The Subordination Agreement between Union Bank and JV is integral to Union Bank's claim of priority to the Trestle Creek property. Because Union Bank is the prevailing party, it is entitled to attorney fees under Idaho Code section 12-120(3).

## IV. CONCLUSION

We affirm the district court's denial of JV's motion for judgment on the pleadings, the district court's grant of summary judgment to Union Bank, and the district court's denial of JV's motion for reconsideration. We award attorney fees and costs on appeal to Union Bank.

Chief Justice BURDICK, Justices EISMANN, W. JONES and Justice Pro Tem J. JONES, **CONCUR**.